MICKLE, Judge.
Appellant appeals a final judgment awarding insurance proceeds to appellee. Because we conclude that the underlying action herein is preempted by the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., we reverse.
Decedent, David Reineke, and appellee were married in 1958. They obtained a final judgment of dissolution of marriage on December 30, 1981. That judgment included the finding that “the wife is entitled to be maintained on the present insurance policies of the husband as sole beneficiary for so long as he shall be obligated to make any payments to the wife pursuant to the terms of this final judgment.” In contradiction to this finding, the same final judgment of dissolution orders that “[t]he husband shall carry the wife as the sole beneficiary of all life insurance policies presently in effect upon his life including his group coverage with his employer Crowley Maritime so long as he shall be required to pay her any benefits under the term of his policy.”
At the time the dissolution judgment was entered, decedent was employed with Crowley Maritime Corporation and insured under its basic group life insurance in the sum of $50,000.00, issued by Bankers Life Insurance Company. Following entry of the judgment, decedent maintained appellee as the designated beneficiary. Under the terms of this policy, coverage was to terminate on the last day of active employment. Thereafter, in 1982, Crowley Maritime obtained for certain executive employees, including decedent, separate life insurance coverage in the additional sum of $50,000.00, issued by Mutual Benefit Life Insurance Company. This policy is part of an employee benefit plan federally qualified under ERISA. The policy provides “[i]f you are married, your spouse will automatically be your beneficiary. However, you may waive that designation and name someone *1184 else with your spouse’s signed and notarized consent.”
In 1988, decedent married Vicki Reineke, designating her as beneficiary on this new executive policy, retaining appellee as beneficiary on the basic policy. Decedent subsequently divorced Vicki and, in 1986, married appellant, designating her as beneficiary on the executive policy. At no time did appellant or decedent make efforts to waive the automatic spousal beneficiary designation on this policy. Decedent’s health began to decline and he notified Crowley Maritime that he wished to retire early. Decedent’s subsequent retirement on December 30, 1988, resulted in an automatic termination of the basic policy. Decedent died at age sixty-two on May 28, 1991, with only the executive policy still in effect. Until his death, decedent continued paying alimony to appellee pursuant to the dissolution judgment.
On June 6, 1991, appellant submitted a claim to Mutual Benefit for proceeds. When Mutual Benefit refused to pay same, the instant action ensued. At an early point in the action below, Mutual Benefit was granted leave to interplead the insurance proceeds and appellee was joined as intervenor. Following a trial, the lower court determined that the intent of the final dissolution judgment was that decedent maintain a $50,-000.00 life insurance policy for the benefit of appellee so long as decedent was obligated to make alimony payments to her. The lower court concluded that this requirement divested decedent of any ownership rights in the policy and that, notwithstanding the fact that the executive policy did not exist at the time of the dissolution judgment, appellee was not divested of her equitable interest obtained through the dissolution judgment. Lastly, the lower court concluded that the provisions of ERISA were not preemptive.
The parties herein do not dispute that the executive life policy was an employee benefit plan governed by ERISA. In order to comply with ERISA, an employee pension benefit plan must contain, among other things, a prohibition against assignment or alienation of benefits. 29 U.S.C. § 1056(d)(1). Pursuant to 29 U.S.C. § 1144(a), this “spendthrift” provision generally will preempt any state laws permitting assignment or alienation of benefits. 29 U.S.C. § 1144(a), the ERISA preemption clause, provides in pertinent part: “[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....” A state claim “relates to” an employee benefit plan “if it has a connection with or reference to such plan.” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). “State law” includes “all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.” 29 U.S.C. § 1144(c).
Federal law governing the treatment of employee pension benefit plans in state domestic relations was changed in 1984 with the enactment of the Retirement Equity Act (REA). REA amended ERISA by creating a limited exception to the prohibition of assignment or alienation of qualified plan benefits when a qualified domestic relations order (QDRO) is issued pursuant to state domestic relations law. 29 U.S.C. § 1144(b)(7). 29 U.S.C. 1056(d)(3)(B)(i) provides that an order relating to spousal property rights is a QDRO if it “creates or recognizes the existence of an alternate payee’s right to ... receive all or a portion of the benefits payable with respect to a participant under the plan.” Certain factual information must be specified in the order including (1) the name and last known mailing address (if any) of the participant and each alternate payee; (2) the amount or percentage of. the participant’s benefits to be paid by the plan to an alternate payee (or the manner in which the amount or percentage is to be determined); (3) the number of payments or the period for which the payments are required; and (4) the specific name of each plan to which the order applies. In addition, the order must provide for non-alternation of benefits in that the order will not be qualified if it (1) requires a plan to provide a type or form of benefit, or any option, not otherwise available under the plan; (2) requires the plan to provide increased benefits (determined on the basis of actuarial value); or (3) requires benefits to be paid to an alternate payee if such benefits are already committed to be *1185 paid to another alternate payee under a preexisting QDRO. 29 U.S.C. § 1056(d)(3)(B)(C) & (D). Substantial compliance with these mechanical requirements may suffice. See S.Rep. No. 575, 98th Cong.2d Sess.; 20 (1984), reprinted in 1984 U.S.C.C.A.N. 2547, 2566; Stinner v. Stinner, 520 Pa. 374, 554 A.2d 45 (1989).
In the case sub judice, in determining that the judgment of dissolution met the aforementioned requirements, hence precluding the preemptive effect of ERISA, the lower court apparently overlooked or misapplied the applicable date of REA. The effective date of REA for QDRO purposes is January 1, 1985. Pub.Law 98-397 § 303(d), reprinted at 1984 U.S.C.C.A.N. 1426, 1453. In the case of a domestic relations order entered before such date, the plan administrator:
(1) shall treat such order as a qualified domestic relations order if such administrator is paying benefits pursuant to such order on such date, and
(2) may treat any other such order entered before such date as a qualified domestic relations order even if such order does not meet the requirements of such amendments.
“Administrator” is defined in section 1002(16)(A) as:
(i) the person specifically so designated by the terms of the instrument under which the plan is operated;
(ii) if an administrator is not so designated, the plan sponsor; or
(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.
Herein, the final judgment of dissolution was entered on December 30,1981. We find no support in the record for the applicability of either of the above two limited exceptions providing for retroactive application of the amendment. Even if the dissolution judgment meets the strict requirements of a QDRO, we feel compelled to find the preemption provisions of ERISA controlling. Hence, the lower court was precluded from applying inconsistent or conflicting state law in .enforcing the provisions of the dissolution judgment. The executive policy, in compliance with ERISA, contained an anti-alienation clause. Inasmuch as the record reveals no waiver of such, the appellant herein, as designated beneficiary, must prevail. We therefore REVERSE and REMAND for entry of a final judgment awarding appellant the proceeds of the executive policy.
SMITH, J., specially concurs with opinion.
WOLF, J., specially concurs with opinion.